IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| **EMMANUEL RODRIGUEZ,**<br><br>**Plaintiff,**<br><br>-v-<br><br>**EQUIFAX INFORMATION SERVICES, LLC, TRANSUNION, LLC, EXPERIAN INFORMATION SOLUTIONS, INC. and IQ DATA INTERNATIONAL, INC.,**<br><br>**Defendants.** | Civil Case Number:<br><br><u>**CIVIL ACTION**</u><br><br>**COMPLAINT**<br>**AND**<br>**DEMAND FOR JURY TRIAL** |

## **INTRODUCTION**

1. Plaintiff, Emmanuel Rodriguez, brings this action under the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*. (the "FCRA") alleging that Experian Information Solutions, Inc. ("Experian"), TransUnion, LLC ("TransUnion"), Equifax Information Services, LLC ("Equifax") and IQ Data International, Inc. ("IQ Data") have negligently and recklessly disseminated false information regarding the Plaintiff's credit.

2. Plaintiff further alleges that TransUnion, Equifax and Experian failed to follow reasonable procedures to ensure maximum accuracy of credit reports they prepared concerning Plaintiff, and failed to investigate credit report inaccuracies in response to Plaintiff's disputes.

3. Plaintiff seeks statutory, actual, and punitive damages, along with injunctive and declaratory relief, and attorneys' fees and costs.

## **JURISDICTION**

4. The Court has jurisdiction of this matter under 28 U.S.C. § 1331 and 15 U.S.C. § 1681p. All defendants regularly conduct business within the state of Texas and violated Plaintiff's

rights under the FCRA in the state of Texas as alleged more fully below.

5. Venue is proper this district under 28 U.S.C. 1391(b) because Plaintiff resides in this District, Defendants conduct business in this District, and communications giving rise to this action occurred in this District.

## PARTIES

6. Plaintiff, Emmanuel Rodriguez ("Plaintiff"), is a resident of Fort Worth, Texas and is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

7. Defendant Experian Information Solutions, Inc. ("Experian") is one of the largest credit reporting agencies in the United States, and is engaged in the business of assembling and disseminating credit reports concerning hundreds of millions of consumers. Experian is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f) of the FCRA, and is regularly engaged in the business of assembling, evaluating, and dispersing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d)(1) of the FCRA, to third parties.

8. Experian is a corporation incorporated in the State of Florida, with its principal place of business located in Costa Mesa, California.

9. Defendant Equifax Information Services, LLC ("Equifax") is similarly one of the largest credit reporting agencies in the United States, and is engaged in the business of assembling and disseminating credit reports concerning hundreds of millions of consumers. Equifax is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f) of the FCRA, and is regularly engaged in the business of assembling, evaluating, and dispersing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d)(1) of the FCRA, to third parties.

10. Equifax's principal place of business is 1550 Peach Tree Street, N.W., Atlanta, GA 30309.

11. Defendant TransUnion, LLC ("TransUnion") is also one of the largest credit reporting agencies in the United States, and is engaged in the business of assembling and disseminating credit reports concerning hundreds of millions of consumers. Trans Union is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f) of the FCRA, and is regularly engaged in the business of assembling, evaluating, and dispersing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d)(1) of the FCRA, to third parties.

12. Trans Union is a company with its principal place of business located at 555 West Adams Street, Chicago, IL 60661.

13. Defendant IQ Data International, Inc. is a third-party debt collector with its primary place of business located in Bothell, Washington.

## FACTUAL ALLEGATIONS

14. Sometime prior to November 28, 2022, Plaintiff discovered that an alleged debt collection account with Defendant IQ Data was being inaccurately reported on his credit reports.

15. To Plaintiff's horror, this alleged debt was listed with original creditor: The Silverlake TX. Plaintiff was exacerbated as this alleged debt stems from a previous housing rental from which Plaintiff had lawfully vacated.

16. In November of 2020, Plaintiff was living in the Silverlake rental with his then-girlfriend. During one horrific incident, Plaintiff's then-girlfriend attacked him and attempted to stab him with a knife. A police report was filed and formal charges for aggravated assault with a deadly weapon were brought against the girlfriend. On November 11, 2020, the Tarrant County

Court issued an emergency protective order against the girlfriend intending to protect the victim, Plaintiff.

17. Obviously after experiencing such a traumatic event, Plaintiff vacated the shared Silverlake rental, as it was not safe for him to remain there.

18. Texas Property Code § 92.016 provides tenants who are victims of family violence the right to terminates the tenant's rights and obligations under a lease and vacate the dwelling while avoiding any liability for future rent and other sums due under the lease.

19. Clearly, when Plaintiff was the victim of a near stabbing at the hands of his partner in the home he shared, he was a victim of family violence, and accordingly, he provided notice to his landlord as required by the statute and vacated the Silverlake rental.

20. Despite this, IQ Data has been furnishing this alleged debt to the major credit bureaus, forcing Plaintiff to suffer further pain from this horrendous incident.

21. Additionally, Plaintiff discovered that Defendant Equifax was listing an account with account number 129324XXX on his report. This account appears in duplicate on Plaintiff's report; once under "Open Accounts" and once under "Collection Accounts". Both entries report the account as having been opened on August 5, 2022, a balance of $117, an account type of "Collection Account" and a status of "Unpaid". However, neither entry lists an account name, an original creditor, any payment history, any contact info, or any comments. Accordingly, Plaintiff had no idea what these negative accounts represent, and was rendered incapable of even disputing them with this minimal information.

22. Accordingly, on or about November 28, 2022, Plaintiff initiated disputes with Experian, Equifax, and TransUnion, specifically disputing the reporting of the IQ Data account.

23. With his disputes, Plaintiff included copies of the incident police report and his

2020 protective order, and asserted that under Texas law, he was the victim of family violence and was free from liability for vacating the apartment.

24. Additionally, on multiple occasions, including on or about December 6, 2022, Plaintiff initiated disputes directly with IQ Data, specifically disputing the reporting of the IQ Data account.

25. With his disputes, Plaintiff included copies of the incident police report and his 2020 protective order, and asserted that under Texas law, he was the victim of family violence and was free from liability for vacating the apartment.

26. Within 30 days of receipt of the Plaintiff's disputes, the Defendants were required to investigate the disputed information and provide the Plaintiff with the results of their investigation.

27. However, Experian failed to do an adequate investigation of the Plaintiff's dispute.

28. Instead, Experian continues to report this inaccurate account on Plaintiff's credit report to this day.

29. TransUnion also failed to do an adequate investigation of the Plaintiff's dispute.

30. Instead, TransUnion also continues to report this inaccurate account on Plaintiff's credit report to this day.

31. Equifax also failed to do an adequate investigation of the Plaintiff's dispute.

32. Instead, Equifax also continues to report this inaccurate account on Plaintiff's credit report to this day.

33. At all times pertinent hereto, Defendants' conduct was willful, and carried out in reckless disregard for a consumer's rights as set forth under section 1681i of the FCRA.

34. As a direct and proximate result of the Defendants' willful and/or negligent refusal

to conduct a reasonable investigation as mandated by the FCRA, Plaintiff has been harmed in his daily life.  For example, the Plaintiff's credit scores dropped severely because of this inaccurate reporting, and the Plaintiff has been denied credit on multiple occasions, causing the Plaintiff to sustain monetary damages.

35. Additionally, and significantly, Plaintiff has been forced to suffer extreme mental anguish and distress as a result of this wrongful reporting. The victims of family violence are inherently subjected to severe trauma arising from the incident, but this can be particularly devastating for male victims, as there is a social stigma associated with being a male victim of such violence. By continuing to report this debt and the ensuing damage it causes in Plaintiff's ability to carry on his life, he has been forced to relive this horrifically traumatic incident, worrying if he will continue to be punished for this incident simply by virtue of being a male victim who did what any law-abiding citizen would do to protect themself.

36. As a result of Defendants' conduct, Plaintiff has suffered significant emotional distress, including feelings of hopelessness, loss of appetite, trouble sleeping, loss of energy, the severe stress and anxiety from reliving this emotional trauma, frustration, and the fear that he will forever be hindered from rebuilding his life due to his victimhood.

## COUNT I
## VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
## 15 U.S.C. § 1681i
## AGAINST EXPERIAN

37. All preceding paragraphs are realleged.

38. At all times pertinent hereto, Experian was a "consumer reporting agency" ("CRA") as that term is defined by 15 U.S.C. § 1681a(c).

39. The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is, in fact, inaccurate, or is unable to verify the

accuracy of the disputed information, the CRA is required to delete that information from the consumer's file. *See* 15 U.S.C. § 1681i(a)(5)(A).

40. In November of 2022, the Plaintiff initiated a dispute with Experian requesting that they correct specific items in his credit file that was patently inaccurate and damaging to him, namely the IQ Data account stemming from Plaintiff's lawful tenant vacation.

41. Experian received the Plaintiff's dispute letter, as evidenced by the certified mail tracking number in the Plaintiff's possession.

42. However, Experian never adequately investigated the Plaintiff's disputes, as required by the FCRA.

43. Instead, Experian, having either conducting no investigation or failing to conduct a reasonable investigation, continued to report this inaccurate information, something that any basic investigation would have prevented.

44. As a direct and proximate result of Experian's willful and/or negligent refusal to conduct a reasonable investigation as mandated by the FCRA, Plaintiff has been harmed, as explained above.

<u>**COUNT II**</u>
**FAILURE TO ASSURE MAXIMUM POSSIBLE ACCURACY**
**15 U.S.C. § 1681e(b)**
**AGAINST EXPERIAN**

45. All preceding paragraphs are realleged.

46. Section 1681e(b) of the FCRA requires that, "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

47. Were Experian to follow procedures to assure maximum possible accuracy of the credit report it prepares concerning Plaintiff, it would have removed or corrected the inaccurate IQ

Data information being reported on the Plaintiff's credit report, especially where a basic investigation of the Plaintiff's disputes would have corroborated Plaintiff's disputes.

48. As a direct and proximate result of Experian's willful and/or negligent failure to follow procedures to assure maximum possible accuracy of the information it reports, Plaintiff have been harmed, as explained above.

## COUNT III
## VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
## 15 U.S.C. § 1681i
## AGAINST EQUIFAX

49. All preceding paragraphs are realleged.

50. At all times pertinent hereto, Equifax was a "consumer reporting agency" ("CRA") as that term is defined by 15 U.S.C. § 1681a(c).

51. The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is, in fact, inaccurate, or is unable to verify the accuracy of the disputed information, the CRA is required to delete that information from the consumer's file. *See* 15 U.S.C. § 1681i(a)(5)(A).

52. In November of 2022, the Plaintiff initiated a dispute with Equifax requesting that they correct specific items in his credit file that was patently inaccurate and damaging to him, namely the IQ Data account stemming from Plaintiff's lawful tenant vacation.

53. Equifax received the Plaintiff's dispute letter, as evidenced by the certified mail tracking number in the Plaintiff's possession.

54. Equifax, having either conducting no investigation or failing to conduct a reasonable investigation, continued to report these inaccurate items on the Plaintiff's credit file, something that any basic investigation would have prevented.

55. As a direct and proximate result of Equifax's willful and/or negligent refusal to

conduct a reasonable investigation as mandated by the FCRA, Plaintiff have been harmed, as explained above.

## COUNT IV
### FAILURE TO ASSURE MAXIMUM POSSIBLE ACCURACY
### 15 U.S.C. § 1681e(b)
### AGAINST EQUIFAX

56. All preceding paragraphs are realleged.

57. Section 1681e(b) of the FCRA requires that, "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

58. Were Equifax to follow procedures to assure maximum possible accuracy of the credit report it prepares concerning Plaintiff, it would have removed or corrected the inaccurate IQ Data information being reported on the Plaintiff's credit report, especially where a basic investigation of the Plaintiff's dispute would have corroborated Plaintiff's dispute.

59. Further, were Equifax to follow procedures to assure maximum possible accuracy of the credit report it prepares concerning Plaintiff, it would have removed or corrected the duplicate 129324XXX account entries, as 1) they appear in duplicate and 2) neither contains any sufficient information by which the accounts can be identified. Inherently, this lack of information fails to be maximally accurate.

60. As a direct and proximate result of Equifax's willful and/or negligent failure to follow procedures to assure maximum possible accuracy of the information it reports, Plaintiff has been harmed, as explained above.

## COUNT V
### VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681i
### AGAINST TRANSUNION

61. All preceding paragraphs are realleged.

62. At all times pertinent hereto, Transunion was a "consumer reporting agency" ("CRA") as that term is defined by 15 U.S.C. § 1681a(c).

63. The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is, in fact, inaccurate, or is unable to verify the accuracy of the disputed information, the CRA is required to delete that information from the consumer's file. *See* 15 U.S.C. § 1681i(a)(5)(A).

64. In November of 2022, the Plaintiff initiated a dispute with Transunion requesting that they correct these specific items in his credit file that were patently inaccurate and damaging to him, namely the IQ Data account stemming from Plaintiff's lawful tenant vacation.

65. Transunion received this dispute, as evidenced by the certified mail tracking number in the Plaintiff's possession.

66. Transunion, having either conducting no investigation or failing to conduct a reasonable investigation, continued to report these inaccurate items on the Plaintiff's credit file, something that any basic investigation would have prevented.

67. As a direct and proximate result of Transunion's willful and/or negligent refusal to conduct a reasonable investigation as mandated by the FCRA, Plaintiff has been harmed, as explained above.

## COUNT VI
### FAILURE TO ASSURE MAXIMUM POSSIBLE ACCURACY
### 15 U.S.C. § 1681e(b)
### AGAINST TRANSUNION

68. All preceding paragraphs are realleged.

69. Section 1681e(b) of the FCRA requires that, "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum

possible accuracy of the information concerning the individual about whom the report relates."

70. Were Transunion to follow procedures to assure maximum possible accuracy of the credit report it prepares concerning Plaintiff, it would have removed or corrected the inaccurate Citibank information being reported on the Plaintiff's credit reports, especially where a basic investigation of the Plaintiff's dispute would have corroborated Plaintiff's dispute.

71. As a direct and proximate result of Transunion's willful and/or negligent failure to follow procedures to assure maximum possible accuracy of the information it reports, Plaintiff has been harmed, as explained above.

## COUNT VII
### FAILURE TO INVESTIGATE DISPUTE
### FCRA, 15 U.S.C. § 1681s-2(b)
### AGAINST IQ DATA

72. All preceding paragraphs are re-alleged.

73. Furnishers of credit information have a duty under the FCRA to investigate disputes from consumers as to the accuracy of information being reported.

74. On or about November 28 of 2022, Plaintiff initiated disputes with the credit bureaus disputing the accuracy of the accounts being reported by IQ Data.

75. Additionally, on or about December 6 of 2022, Plaintiff initiated a dispute directly with IQ Data disputing the accuracy of the IQ Data account

76. Upon information and belief, IQ Data received notice of these disputes from the credit bureaus.

77. IQ Data was obligated, pursuant to section 1681s-2(b) of the FCRA to conduct a complete and thorough investigation with respect to Plaintiff's dispute.

78. Even after the Plaintiff properly disputed these accounts with the credit reporting agencies and IQ Data itself, IQ Data refused to conduct a reasonable investigation and continued

inaccurately reporting the multiple fraudulent accounts on Plaintiff's credit reports.

79. IQ Data's conduct violated section 1681s-2(b) of the FCRA.

80. As a result of IQ Data's conduct, Plaintiff was harmed, as discussed above

## DEMAND FOR TRIAL BY JURY

81. Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby requests a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff demands judgment against Defendants as follows:

A. Awarding Plaintiff actual damages;

B. Awarding Plaintiff statutory damages;

C. Awarding Plaintiff punitive damages;

D. Awarding Plaintiff the costs of this action and reasonable attorneys' fees and expenses;

E. Awarding pre-judgment interest and post-judgment interest;

F. A declaration that the Defendants' conduct alleged herein is unlawful, as set forth more fully above;

G. Equitable relief, enjoining the Defendants from engaging in the unjust and unlawful conduct alleged herein; and

H. Awarding Plaintiff such other and further relief as this Court may deem just and proper.

Dated: January 27, 2023

        MARCUS & ZELMAN, LLC

        */s/ Yitzchak Zelman*
        Yitzchak Zelman, Esq.
        MARCUS & ZELMAN, LLC

701 Cookman Ave, Suite 300
Asbury Park, New Jersey 07712
(732) 696-3282 telephone
(732) 298-6256 facsimile
yzelman@marcuszelman.com
*Attorney for Plaintiff*

-13-